Case 4:20-cv-03315   Document 26   Filed on 06/14/21 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
June 14, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Dr. Adekunle C. Omoyosi, PharmD, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:20-cv-03315 |
| | § | |
| Texas Health & Human Services Commission, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 14) and Plaintiff's Motion to Amend his Amended Complaint (ECF No. 21). Having considered the pleadings, the parties' filings, and the law, the Court **RECOMMENDS**[1] Defendant's Motion to Dismiss be **GRANTED** and Plaintiff's Motion to Amend his Amended Complaint be **DENIED**.

### I. BACKGROUND

Plaintiff is proceeding *pro se* in this case. In his operative Amended Complaint (ECF No. 11), he identifies himself as a pharmacist and member of a protected group (Black-American man), and alleges he submitted applications to, but was not hired, by Defendant for the positions of: Emerging and Acute Infection Disease Unit Director, Vaccine Management Group Manager, Chief Information Officer, and Chief Program and Services Officer. Plaintiff complains that Defendant's failure to hire him was the result of racial discrimination in violation of Title VII.

---

[1] District Judge Sim Lake referred this case to the undersigned Magistrate Judge for full pretrial management on June 14, 2021. ECF No. 25.

1

In addition, Plaintiff's Amended Complaint challenges Defendant's handling of the ongoing COVID-19 pandemic and seeks the following injunctive relief:

> The Plaintiff requests relief in the form a (sic) preliminary injunction in the structure of health, safety, and labor of the Defendant to correct or prevent abridged the immunities, privileges, or rights of people in the Texas (sic), with: (1) an emergency 2-week state wide stay-at-home order, shut down of nonessential businesses, and mandatory masks in public spaces, in response to new Coronavirus variants and surging cases, with reopening plans oversaw (sic) by an independent advisory committee of members disproportionately affected by Covid-19; (2) immediate ethics training, integrity training, racial diversity training, and whistle-blower complaint training for [Defendant] from a Texas HBCU, at least quarterly, not to expire; (4) emergency Medicaid expansion and other Benefits and Services for equal protection of the public, not to expire; (5) emergency . . . oversight of Regulatory Functions [of Defendant] from an independently racially diverse advisory committee, not to expire; (6) emergency and significant increases in enforcement of current civil rights laws; and (7) all other equitable remedies.

ECF No. 11 at 6. Defendant seeks dismissal of Plaintiff's entire Amended Complaint, arguing that Plaintiff has failed to state a Title VII claim and that Plaintiff lacks standing to challenge Defendant's COVID-19 responses. Plaintiff did not file a timely response to the Motion but has sought leave to amend his Amended Complaint. The Court now recommends that Defendant's Motion to Dismiss be granted and Plaintiff's Motion to Amend his Amended Complaint be denied.

## II. ANALYSIS

**A. Plaintiff's challenges to Defendant's handling of the COVID-19 pandemic should be dismissed pursuant to Rule 12(b)(1).**

### 1. Rule 12(b)(1) Standards

Defendant argues Plaintiff's challenges to its COVID-19 response must be dismissed for lack of subject matter jurisdiction because (1) Plaintiff does not have standing to bring the challenge and (2) Defendant's sovereign immunity is a jurisdictional bar to the claims.

> Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to

> seek redress for a legal wrong. In this way, "[t]he law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches," and confines the federal courts to a properly judicial role[.]

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (internal citations omitted). Thus, a motion to dismiss for lack of standing is properly considered under Federal Rule of Civil Procedure 12(b)(1). *See Little v. KPMG LLP*, 575 F.3d 533, 540-41 (dismissing claim pursuant to Rule 12(b)(1) where plaintiff's claim was too speculative to confer standing). Likewise, claims barred by Eleventh Amendment sovereign immunity must be dismissed under Rule 12(b)(1). *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

In reviewing a motion to dismiss under Rule 12(b)(1), a court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Griener v. U.S.*, 900 F.3d 700, 703 (5th Cir. 2018) (quotations omitted). "This analysis is generally confined to a review of the complaint and its proper attachments." *Lane v. Halliurton*, 529 F.3d 548, 557 (5th Cir. 2008). Under Rule 12(b)(1), however, "the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quotations omitted). The plaintiff bears the burden of establishing subject matter jurisdiction. *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014) (citations omitted).

### 2. Plaintiff has no standing to challenge Defendant's COVID-19 response.

The Court cannot exercise jurisdiction over Plaintiff's challenges to Defendant's COVID-19 response unless Plaintiff has standing to bring those challenges. *See Rivera v. Wyeth-Ayerst*

*Labs.*, 283 F.3d 215, 219 (5th Cir. 2002) ("[W]e must decide standing first, because it determines the court's fundamental power even to hear the suit."). Standing requires the plaintiff plead an (1) injury in fact (2) fairly traceable to the challenged conduct of the defendant (3) that is likely to be redressed by a favorable judicial decision. *Spokeo,* 136 S.Ct. at 1547. In this case, Plaintiff must establish he suffered an injury in fact, fairly traceable to Defendant's response to the COVID-19 pandemic, and that a favorable judicial decision would likely redress his injury.

"To establish an injury in fact, a plaintiff must show that he suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. "The injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Rivera*, 283 F.3d at 320 (alteration omitted) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)). Plaintiff has failed to allege such an injury in this case. Plaintiff merely alleges

> [Defendant], the Texas government's administrator of health and human services, breached their duty of improving the health, safety and well-being of Texans with good stewardship of public resources; in the syndemic of health disparities, disparate impact, and the COVID-19 pandemic – an irreparable injury to the Plaintiff as a Black-American man, Healthcare Provider, and Texan.

ECF No. 11 at 5. Under the most favorable interpretation of Plaintiff's Amended Complaint, he appears to allege that Defendant failed to act in response to various developments in the COVID-19 pandemic and that those failures have particularly affected minority and low socioeconomic groups.[2] Plaintiff, a self-described "Black-American man, Healthcare Provider, and Texan[,]" has

---

[2] Specifically, Plaintiff alleges Defendant "commissioned no further actions or statements" related to COVID-19 after (1) Governor Abbott declared a state of disaster and the Texas Department of State Health Services declared a public

failed to identify any particularized, concrete injury he has suffered as a result of the Defendant's response to the COVID-19 pandemic. Plaintiff's allegations of a special interest in Defendant's handling of the pandemic as a Black Texan fail to demonstrate he has suffered a particularized injury in fact and his claims must be dismissed for lack of standing.[3]

### 3. Defendant's sovereign immunity bars subject matter jurisdiction in this Court.

Even if Plaintiff had alleged a concrete, particularized injury in fact, his claims must still be dismissed pursuant to Rule 12(b)(1) because sovereign immunity operates as a jurisdictional bar to his claims. "Absent an unequivocal waiver or congressional abrogation, the Eleventh Amendment bars suits in federal court by a state's citizens against their own state or a state agency or department." *Houston Home Dialysis v. Blue Cross & Blue Shield of Tex.*, Civil Action No. H-17-2095, 2018 WL 5249996, at *7 (S.D. Tex. Oct. 22, 2018) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999); *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 743 (5th Cir. 1986); U.S. CONST. amend. XI). Thus, Defendant, as a Texas state agency, is entitled to the protections of sovereign immunity and dismissal under Rule 12(b)(1) is recommended on this basis as well. *See Cephus v. Texas Health and Human Services Comm'n*,

---

health disaster; (2) Lieutenant Governor Patrick "insinuate[d]" that "racial and socioeconomic groups were to be scarified for the economy"; (3) the United States authorized Defendant to extend coverage for SNAP and Medicaid; (4) Defendant reported confirmed COVID-19 cases 13% of Texas nursing homes; (5) Governor Abbott began reopening the economy; (6) Defendant received $54 million through the CARES Act to provide COVID-19 relief for disability and geriatric services; (7) Governor Abbott extended the disaster declaration; (8) Defendant was authorized by the USDA to provide over $1 billion in benefits to families without access to free or reduced meals at school due; (9) Governor Abbott began reversing Harris County Judge Lina Hidalgo's call for reinstatement of a stay-at-home order; (10) Attorney General Paxton opposed expansion of absentee voting in Harris County; and (11) Attorney General Paxton challenged a two-week shutdown of non-essential business ordered by El Paso County Judge Ricardo Samaniego.

[3]Plaintiff's Amended Complaint contains two allegations unrelated to Defendant's handling of the COVID-19 pandemic which must also be dismissed for lack of standing: (1) that Former Assistant Texas Attorney General Nick Moutos was "involuntary (sic) separated" for tweets that used extreme language against an individual or a group that either implies a direct threat that physical force will be used against them, or is seen as an indirect call for others to use it[]" and (2) that "seven executives in the upper tiers of the [Attorney General's] office" released a statement that Attorney General Paxton was violating federal or state law due to improper influence, abuse of office, and bribery. Plaintiff has failed to plead an injury in fact and, therefore, these claims also must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

146 F. Supp. 3d 818, 827 (S.D. Tex. 2015) (finding Defendant entitled to sovereign immunity as a state agency).

## B. Plaintiff's Title VII claims should be dismissed pursuant to Rule 12(b)(6).

### 1. Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Rule 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the Court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### 2. Plaintiff has failed to state a claim for failure to hire under Title VII.

A failure or refusal to hire an individual due to "race, color, religion, sex, or national origin" violates Title VII. 42 U.S.C. § 2000e-2(a)(1). To establish a claim for discriminatory failure to hire, Plaintiff must show (1) he was in the protected class; (2) he applied for and was qualified for the position sought; (3) he was not selected; and (4) after rejection, another applicant outside the protected class was hired. *Scott-Benson v. KBR, Inc.*, 826 F. App'x 364, 368 (5th Cir. 2020) (citations omitted).

Plaintiff alleges in the Amended Complaint that (1) he is a Black-American man; (2) he submitted applications to Defendant for four different positions;[4] (3) Defendant failed to hire him as a result of "a seemingly neutral policy or procedure of obstructionism by blocking, demoting, and interference"; (4) the applicants hired to fill the positions were from outside his protected class; and (5) he met many qualifications for the positions.[5] Although Plaintiff makes conclusory allegations in his Amended Complaint, he fails to allege specific facts from which the Court could draw the reasonable inferences that he was a qualified applicant for the positions and that the individuals hired to fill the positions were outside his protected class. *See Sherrod v. Prairie View A&M Uni.*, Civil Action No. H-10-1858, 2011 WL 843936, at *10 (S.D. Tex. Mar. 8, 2011) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Plaintiff provides no facts explaining the nature or duties of the positions for which he applied. Plaintiff provides no facts showing his previous experiences or qualifications are relevant to the positions for which he applied. Absent specific facts describing the duties of the positions and why his professional experience qualified him for the positions, his discriminatory failure to

---

[4] Plaintiff alleges he applied for the positions of: Emerging & Acute Infections Disease Unit Director; Vaccine Management Group Manager; Chief Information Officer; and Chief Program and Services Office.

[5] Defendant lists his alleged qualifications as:
> under graduate research experience building a bioinformatics database with a former Program Director of the National Science Foundation; Advanced Pharmacy Practice Experience at the only Historically Black College and/or University (HBCU) in the World's Largest Medical Center, Texas Medical Center; a corporate partnership with Nvidia, the Artificial Intelligence computing company; 6+ years of Register Pharmacist experience, with vaccine administration certification; 11+ years of Healthcare Industry experience; Bachelors of Science in Biochemistry and Molecular Biology, as a Charles Drew Science Scholar; a cum laude Pharmacy Doctorate (PharmD); and specialized training from the Department of Defense (DoD) and the Federal Emergency Management Agency (FEMA) - specifically Forecasting Techniques, Predictive Analysis & Systems Engineering, Information Technology Service Management, Program Leadership, and Exercising Continuity Plans for Pandemics.

ECF No. 11 at 2.

hire claim is not plausible. *See Corrica v. American Airlines*, Civil Action No. 3:20-CV-0679-B, 2020 WL 7711830, at *6 (N.D. Tex. Dec. 28, 2020) (finding insufficient facts to draw inference that the plaintiff was qualified for a position where she failed to state the duties of the position or whether the position was similar to her past jobs). Because Plaintiff has failed to plead enough facts to state a claim to relief that is plausible on its face that would allow the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged, his failure to hire claim under Title VII must be dismissed pursuant to Rule 12(b)(6). *Sherrod*, 2011 WL 843936, at *3 (quoting *Twombly*, 550 U.S. at 547; *Iqbal*, 556 U.S. at 663).

### 3. Plaintiff has failed to state a claim for disparate impact under Title VII.

To the extent Plaintiff's Amended Complaint can be interpreted to allege a cause of action for discriminatory impact, he has failed to state a cognizable claim under Title VII.[6] To state a claim of discrimination under a disparate-impact theory, Plaintiff must show (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *Bazile v. City of Houston*, 858 F. Supp. 2d 718, 762 (S.D. Tex. 2012) (quotations omitted). In effect, a disparate-impact discrimination plaintiff must show an employment practice "falls more harshly on one group than another and cannot be justified by business necessity." *Roberts v. U.S. Postmaster General*, 947 F. Supp. 282, 288 (E.D. Tex. 1996) (citations omitted).

Plaintiff has failed to allege a particular policy or procedure that disparately affected members of his protected class. Furthermore, even had Plaintiff sufficiently identified a specific policy and a disparate impact, he has failed to plead any facts from which the Court could reasonably infer a causal connection between any of Defendant's policies or procedures and a

---

[6] Plaintiff's Amended Complaint alleges Defendant "implemented a seemingly neutral policy or procedure of obstructionism by blocking, demoting and interference" that resulted in the failure to hire him.

disparate impact. Plaintiff alleges that "[o]n or about 2020/09/20, a Texas Workforce Commission Civil Rights Division preliminary determination concluded [Defendant's] seemingly neutral policy or procedure of obstructionism by blocking, demoting, and interference were not a business necessity . . . ." ECF No. 11 at 2. This general allegation is insufficient to state a claim for disparate impact under Title VII. As a result, Plaintiff has failed to state a claim for disparate impact under Title VII and the claim should be dismissed pursuant to Rule 12(b)(6).[7]

### C. Plaintiff's claim for injunctive relief is moot.

Defendant also seeks dismissal of Plaintiff's request for injunctive relief. Because each of Plaintiff's claims has been dismissed either for lack of subject matter jurisdiction or for failure to state a claim, Plaintiff's claim for injunctive relief is moot and should be dismissed. *See Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 562 (S.D. Tex. Nov. 1, 2018) (explaining the court's dismissal of the plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim moots the plaintiff's request for injunctive relief "because no claims remain for injunctive relief.").

### D. Plaintiff's Motion to Amend is denied as futile and, therefore, his case should be dismissed with prejudice.

Pursuant to Federal Rule of Civil Procedure 15(a),[8] leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Although Rule 15(a) "evinces a bias in favor of granting leave to amend[,]" *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (citations omitted), that leave is "by no means automatic, and the decision to grant or deny

---

[7] Plaintiff lists Title VII and Title VI as bases for federal subject matter jurisdiction over this case. Title VI provides "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiff alleges no facts related to his Title VI claim in his Amended Complaint. Therefore, Plaintiff's Title VI claim must be dismissed for failure to state a claim.

[8] Rule 15 governs a plaintiff's motion for leave to amend where the motion is filed before the deadline to amend pleadings. *Berge Helene Ltd v. GE Oil & Gas, Inc.*, Civil Action No. H-08-2931, 2009 WL 1835193, at *2 (S.D. Tex. June 26, 2009).

leave to amend is 'entrusted to the sound discretion of the district court.'" *Berge Helene Ltd v. GE Oil & Gas, Inc.*, Civil Action No. H-08-2931, 2009 WL 1835193, at *2 (S.D. Tex. June 26, 2009) (quoting *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 293 F.3d 282, 286 (5th Cir. 2002)). In deciding whether to grant leave to file an amended complaint, the district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). "A motion for leave to amend should be denied as futile if the amended complaint could not withstand a motion to dismiss." *Id.* (citing *Goldstein*, 340 F.3d at 254).

The Court concludes that Plaintiff's proposed Second Amended Complaint cannot survive a motion to dismiss for the same reasons the First Amended Complaint cannot survive a motion to dismiss. Plaintiff's proposed Second Amended Complaint asserts claims for "race discrimination under [Title VII]; in the syndemic of health disparities, disparate impact, the COVID-19 with variants pandemic, and the 2021 Texas Electric and Water crisis." ECF No. 21 at 1. It also adds as defendants the Office of the Attorney General and the Office of the Governor, and it expands the requested relief. ECF No. 21-1. Plaintiff makes no specific factual allegations regarding Defendant's COVID-19 response from which the Court could infer a particularized injury in fact sufficient to demonstrate Plaintiff's standing to assert a claim. Similarly, Plaintiff's new allegations regarding the "2021 Texas Electric and Water crisis" fail under the same analysis applied to his COVID-19 claims: he has failed to allege a particularized injury that would confer standing on him to bring the claims. Plaintiff alleges only that "millions of Texans, United States citizens, suffered from mass power outages, water and food shortages, as a result of severe winter storms and State Executive's negligence in operation of a segregated electrical grid[]" and that, as

10

a result, "[t]he State Executive, breached their duty of improving the health, safety and well-being of Texans with good stewardship of public resources . . . ." *Id*. at 6. These allegations of wrongdoing in connection with the "2021 Electric and Water Crisis" also fail to allege a particularized injury in fact. Finally, Plaintiff fails to include in the Second Amended Complaint any additional facts which would support a Title VI or Title VII claim against Defendant.

When a plaintiff's complaint fails to state a claim, the Court generally gives the plaintiff a chance to amend the complaint before dismissing the action unless it is clear that doing so would be futile. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Plaintiff's Second Amended Complaint was filed *after* Defendant's Motion to Dismiss and in lieu of a response to Defendant's Motion. Thus, despite being put on notice of deficiencies in his Amended Complaint, Plaintiff's Second Amended Complaint fails to correct those deficiencies. Under these circumstances, the Court concludes that Plaintiff has already pled his "best case" and that his claims should be dismissed with prejudice. *See Williams v. Health Tex. Provider Network*, Civil Case No. 3:16-CV-391-M-BK, 2017 WL 2608813, at *5 (N.D. Tex. June 1, 2017) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (finding plaintiff pled his best case where the plaintiff's amended complaint filed after a motion to dismiss failed to address deficiencies noted in the defendant's motion). Plaintiff's Second Amended Complaint is fatally flawed for the same reasons as the First Amended Complaint and therefore, Plaintiff's Motion for Leave to Amend should be denied as futile.

### III. CONCLUSION AND RECOMMENDATION

For the reasons stated herein, the Court **RECOMMENDS** Defendant's Motion to Dismiss (ECF No. 14) be **GRANTED** and Plaintiff's Motion to Amend his Amended Complaint (ECF No. 21) be **DENIED**. The Clerk of Court shall send copies of the Memorandum and Recommendation

to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on June 14, 2021 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge